1
2
3
4
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
5

6
CAROLINE M.H.,
7
                    Plaintiff,
8
     v.
9
COMMISSIONER OF SOCIAL
SECURITY,
10
                    Defendant.

Case No. 2:21-cv-00212-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12      Plaintiff has brought this matter for judicial review of defendant's denial of her

13 applications for disability insurance (DIB) and supplemental security income (SSI)

14 benefits.

15      The parties have consented to have this matter heard by the undersigned

16 Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

17 MJR 13.

18                    I.      <u>ISSUES FOR REVIEW</u>

19      A. Did the ALJ properly evaluate the medical opinion evidence?

20      B. Did the ALJ properly evaluate Plaintiff's subjective testimony?

21                    II.      <u>BACKGROUND</u>

22      On October 4, 2018, Plaintiff filed applications for DIB and SSI, alleging in both

23 applications a disability onset date of November 1, 2017. Administrative Record ("AR")

24 201–10. Plaintiff's applications were denied upon official review and upon

25

1   reconsideration. AR 58–59, 90–91. A hearing was held before Administrative Law

2   Judge ("ALJ") C. Howard Prinsloo on August 11, 2020. AR 31–57. On August 28, 2020,

3   ALJ Prinsloo issued a decision finding that Plaintiff was not disabled. AR 10–30. On

4   December 23, 2020, the Social Security Appeals Council denied Plaintiff's request for

5   review. AR 1–6.

6        Plaintiff seeks judicial review of the ALJ's decision. Dkt. 4.

7                    III.   STANDARD OF REVIEW

8        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

9   denial of Social Security benefits if the ALJ's findings are based on legal error or not

10   supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874

11   F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

13   *Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

14                    IV.   DISCUSSION

15        In this case, the ALJ found that Plaintiff had the severe, medically determinable

16   impairments of fibromyalgia, hypertension, anxiety, depression, panic disorder with

17   partial agoraphobia, personality disorder with avoidant, dependent, and possibly

18   borderline features, adrenal insufficiency, and post-traumatic stress disorder ("PTSD").

19   AR 15–16. Based on the limitations stemming from these impairments, the ALJ found

20   that Plaintiff could perform a reduced range of light work. AR 18. Relying on vocational

21   expert ("VE") testimony, the ALJ found at step four that Plaintiff could perform his past

22   relevant work as an insurance clerk, but also found Plaintiff could perform other light,

23   unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at

24   both steps four and five that Plaintiff was not disabled. AR 23–24.

25

1

2      A.  Whether the ALJ Properly Evaluated the Medical Opinion Evidence

3              Plaintiff assigns error to the ALJ's evaluation of medical opinions from Kathleen

4      Andersen, M.D., Geordie Knapp, Ph.D., Jan Gullette, ARNP, and Jorielle Bautista, M.D.

5      Dkt. 12, p. 9.

6              **1. Medical Opinion Standard of Review**

7              Under current Ninth Circuit precedent, an ALJ must provide "clear and

8      convincing" reasons to reject the uncontradicted opinions of an examining doctor, and

9      "specific and legitimate" reasons to reject the contradicted opinions of an examining

10     doctor. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

11             The Social Security Administration, for applications filed on or after March 27,

12     2017, changed the regulations applicable to evaluation of medical opinions. Hierarchy

13     among medical opinions has been eliminated, but ALJs are required to explain their

14     reasoning and specifically address how they considered the supportability and

15     consistency of each opinion. Under these regulations, for claims filed on or after March

16     27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to

17     any medical opinion(s) . . . including those from [the claimant's] medical sources." 20

18     C.F.R. §§ 404.1520c(a), 416.920c(a). The Commissioner's new regulations still require

19     the ALJ to explain their reasoning, and to specifically address how they considered the

20     supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c;

21     *see also,* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

22     Reg. 5844-01 (Jan. 18, 2017). In addition, the 2017 regulations provide that physician's

23

24

25

1  assistants are acceptable medical sources for providing opinions. 20 C.F.R.

2  404.1502(a)(8).

3          Regardless of whether a claim pre- or post-dates this change to the regulations,

4  an ALJ's reasoning must be supported by substantial evidence and free from legal

5  error. *Ford v. Saul*, 950 F.3d 1141, 1153-56 (9th Cir. 2020) (citing *Tommasetti v. Astrue*,

6  533 F.3d 1035, 1038 (9th Cir. 2008)); *see also Murray v. Heckler*, 722 F.2d 499, 501–02

7  (9th Cir. 1983).

8          Under 20 C.F.R. § 416.920c(a), (b)(1)-(2), the ALJ is required to explain whether

9  the medical opinion or finding is persuasive, based on whether it is supported and

10  whether it is consistent. *Brent S. v. Commissioner, Social Security Administration*, No.

11  6:20-CV-00206-BR, 2021 WL 147256 at *5 - *6 (D. Oregon January 16, 2021).

12          These are the two most important factors in the ALJ's evaluation of medical

13  opinions or findings; therefore, "[t]he 'more relevant the objective medical evidence and

14  supporting explanations presented' and the 'more consistent' with evidence from other

15  sources, the more persuasive a medical opinion or prior finding." *Linda F. v. Saul*, No.

16  C20-5076-MAT, 2020 WL 6544628, at *2 (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

17          In the new regulations, the Social Security Administration also broadened the

18  definition of acceptable medical sources to include Advanced Practice Registered

19  Nurses (such as nurse practitioners). *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg.

20  8544; 82 F. Reg. 15263.

21          **2. Opinion of Kathleen Andersen, M.D.**

22          Kathleen Andersen, M.D., a psychiatric consultative examiner, evaluated Plaintiff

23  on January 7, 2019, through a clinical interview and mental status examination, and

24

25

1   diagnosed Plaintiff with general anxiety disorder, panic disorder with partial

2   agoraphobia, major depressive disorder, and personality disorder with avoidant,

3   dependent, possibly borderline features. *See* AR 546–54. She opined that Plaintiff's

4   incapacity as a result of these impairments "seems to be extreme[,]" and that

5
6
7

> [T]he likelihood of her being able to find and maintain employment seems to be guarded at best. If, somehow, she were to find herself at a job, she would undoubtedly report pain and fatigue so severe that she could not focus or complete tasks. Her anxiety and avoidance would undoubtedly result in attendance issues if not quitting her job outright.

8   AR 554.

9         The ALJ found this opinion unpersuasive, reasoning that Dr. Andersen's

10   statements that Plaintiff would have difficulty completing tasks and issues with

11   attendance were inconsistent with (1) Plaintiff's activities of daily living, which showed

12   an ability to persist, function in a normal workday, and routinely attend a job, and (2) the

13   opinions of the non-examining state agency consultants, who had access to the full

14   medical record and better supported their opinions with references thereto. AR 20.

15         With respect to the ALJ's first reason, inconsistency with a claimant's activities

16   may serve as a proper basis for rejecting a medical source's opinion. *Rollins v.*

17   *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants should not be

18   penalized for attempting to lead normal lives in the face of their limitations. *See Reddick*

19   *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561

20   (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed

21   eligible for benefits)). Here, the ALJ found that Plaintiff's admission that she watched

22   television or internet videos for most of the day indicated an ability to persist, and her

23   ability "to help out with some household chores, help her disabled father occasionally,

24
25

go shopping, and manage her own money" indicated the ability to persist and function during a normal workday, and her routine attendance at therapy appointments showed she was able to routinely attend a job. AR 20–21.

These activities, as described, are not comparable to the responsibilities of a work environment, nor are they inconsistent with Dr. Andersen's opinion. Dr. Andersen noted in her report that Plaintiff helped her father, assisted with household chores, and used the Internet. Watching television and internet videos "are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Nor is there sufficient detail regarding Plaintiff's other listed activities to show inconsistency with Dr. Andersen's opinion. Finally, Plaintiff's ability to attend short appointments for therapy on a weekly basis does not reflect an ability to attend a job where daily attendance for eight hours at a time (while producing work product or providing a service -- not analogous to receiving therapy) would be expected. Without more, Plaintiff's activities do not constitute substantial evidence undermining the persuasiveness of Dr. Andersen's opinion. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

With respect to the ALJ's second reason, the existence of a conflict among the medical opinions of Dr. Andersen and the state agency medical consultants, is not, in itself, a reason for choosing one doctor's opinion over the others; rather, it only establishes an issue the ALJ must resolve. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving

conflicts in medical testimony, and for resolving ambiguities."). Here, the ALJ stated that the state agency consultants' opinions were informed by better access to the full record and were better supported by references to the record. AR 21 (citing AR 84, 122). However, the pages cited by the ALJ in support of this finding do not contain any references to any other items in the medical record. AR 84, 122. Nor does the ALJ state, specifically, what items to which the consultants had access would have rendered their opinions better supported. The ALJ failed to make adequate findings, supported by substantial evidence, in rejecting the opinion of Dr. Andersen.

### 3. Opinion of Geordie Knapp, Ph.D.

Dr. Geordie Knapp, another psychiatric consultative examiner, evaluated Plaintiff on June 1, 2020, including a clinical interview and mental status examination, and diagnosed Plaintiff with depressive disorder due to fibromyalgia, with depressive features, in addition to PTSD. *See* AR 680–85. Based on these impairments, Dr. Knapp opined that Plaintiff would be severely limited in her ability to complete a normal workday or work week without interruptions from her symptoms and markedly limited in her ability to communicate and perform effectively in a work setting, perform activities within a schedule and maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 682.

In finding this opinion unpersuasive, the ALJ reasoned that it was inconsistent with (1) the opinions of the non-examining medical consultants, (2) Plaintiff's activities of daily living, and (3) notes in the record in which Plaintiff denied being depressed, showed no abnormal behavior, reported spending time with her family and friends, and denied issues with authority figures. AR 22.

The ALJ's first two reasons are identical to those given for the rejection of Dr. Andersen's opinion, discussed above. The ALJ did not discuss or explain these reasons in greater detail than was employed in the findings regarding Dr. Andersen's opinion, and here, too, they are unsupported by substantial evidence.

With respect to the ALJ's third reason, the ALJ cited to one instance in which Plaintiff, presenting with complaints of ongoing exhaustion and nausea, stated "[s]he does not feel depressed and doesn't feel depression is cause of symptoms." AR 366. The ALJ cited another record in which Plaintiff denied depression, but it is from the same day. AR 465. All three of the records to which the ALJ cited in support of this finding were from providers who were evaluating plaintiff for conditions unrelated to her mental health. AR 366, 465, 479. In addition, Dr. Knapp noted in her clinical interview that Plaintiff's depressive symptoms varied from day to day. AR 681. "Occasional symptom-free periods—and even—the sporadic ability to work—are not inconsistent with disability." *Lester*, 81 F.3d at 833.  Plaintiff's scattered denials of depression symptoms and ability to maintain normal behavior in a clinical setting are not substantial evidence supporting the ALJ's finding.

### 4. Opinions of Jan Gullette, ARNP

Jan Gullette, ARNP, treated Plaintiff from 2007 up to and including the period of alleged disability, offered two opinions regarding Plaintiff's capability: a November 6, 2018 letter and a June 30, 2020 questionnaire. *See* AR 495, 755–61.

In the 2018 letter, Gullette stated that Plaintiff's physical functionality had been deteriorating for four years since her fibromyalgia diagnosis, and Plaintiff had generalized anxiety disorder, obesity as a result of her fibromyalgia medications, and

attention deficit disorder. She noted that during appointments Plaintiff often presented as tired, in tears, and depressed -- and harassment from a coworker and from her brother had made this depression worse. Gullette opined that Plaintiff would be unable to attain or maintain employment. AR 495.

In the 2020 questionnaire, she listed Plaintiff's diagnoses as moderate depression, generalized anxiety disorder, obesity, PTSD, and primary insomnia. Gullette opined that Plaintiff would have extreme limitation in her ability to maintain regular attendance, be punctual within customary tolerances, and perform at a consistent pace without an unreasonable number or length of rest periods. AR 758. In addition, she opined that Plaintiff would be markedly limited in the functional areas of understanding and remembering very short and simple, or detailed, instructions; maintain attention and concentration for extended periods, complete a normal workday or week without interruptions, deal with normal work stress, carry out detailed instructions, and deal with the stress of semiskilled or skilled work. AR 758–59.

The ALJ did not make any finding as to the persuasiveness of Gullette's 2018 letter. While an ALJ errs by not discussing significant probative evidence, the error is harmless where the same reasons the ALJ gave for rejecting other, similar evidence apply equally to the unaddressed evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (holding that valid reasons for rejecting evidence apply equally well to similar evidence ALJ overlooked). To determine whether the ALJ's error in not addressing Nurse Gullette's 2018 letter was harmless, the Court must first determine whether the ALJ gave adequate reasons, supported by substantial evidence, for rejecting Gullette's 2020 opinion.

The ALJ rejected the 2020 opinion by reasoning that it was inconsistent with (1) the opinions of the non-examining medical consultants; (2) Plaintiff's activities of daily living; (3) Plaintiff's self-reporting in which she denied being depressed, did not show abnormal behavior, said she spent time with family and friends, and denied issues with authority figures; and (4) the results of Dr. Andersen's mental status examination. AR 22.

The ALJ's first three reasons are substantially the same as those given for rejecting the opinion of Dr. Knapp, and as discussed above, they are not supported by substantial evidence. With respect to the ALJ's fourth reason, an ALJ need not accept the opinion of even a treating physician if that opinion is inadequately supported "by the record as a whole." *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ noted that, in Dr. Andersen's mental status examination, Plaintiff was able to complete five correct serial-7 subtractions, spell "world" correctly both forward and backward, and recite a five-digit number backward correctly on the first try. AR 22 (citing AR 552–53). However, this does not contradict Nurse Gullette's opinion, in which she indicated Plaintiff did not suffer from reduced intellectual functioning and could manage her own finances. AR 760–61.

The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Dr. Andersen's mental status

1  examination results did not amount to substantial evidence supporting the ALJ's

2  evaluation of Nurse Gullette's opinion.

3      Because the ALJ failed to provide adequate reasoning in rejecting Nurse

4  Gullette's 2020 opinion, the ALJ's failure to address the 2018 letter cannot be

5  considered harmless.

6      **5. Opinions of Jorielle Bautista, M.D.**

7      Dr. Bautista, Plaintiff's treating physician for over a decade, completed a physical

8  functional assessment questionnaire on March 2, 2019. *See* AR 555–60. Therein, she

9  listed Plaintiff's diagnoses as fibromyalgia, fatigue, adrenal insufficiency, exercise-

10 induced asthma, hypertension, panic disorder, nausea, and ADHD. AR 556. She opined

11 that Plaintiff could walk a distance of between 0 and 16 blocks before needing rest,

12 depending on the day; could sit or stand for 1 hour, each, at a time; could sit, or stand

13 and walk, each for less than two hours total in an eight-hour workday. AR 557.

14     In addition, she opined that Plaintiff would need to walk around for 15 minutes

15 every hour, any job would need to permit her shifting positions at will, and she would

16 need unscheduled breaks lasting up to 3 hours every 1 to 2 hours. AR 558. As to

17 exertional limits, she stated that Plaintiff could occasionally look down or up, hold her

18 head in a static position, crouch or squat, climb ladders, or climb stairs; could grasp,

19 turn, twist or make fine manipulations with either hand only 5 percent of the time; and

20 could reach, including overhead reaching, only 20 percent of the time with either arm.

21 AR 558–59. Finally, she opined that Plaintiff could be expected to be absent from work

22 in excess of 4 days per month, and that while Plaintiff would remain medically stable

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

with good and bad days, she had a "poor prognosis for recovery/symptom resolution."
AR 556.

On July 24, 2020, Dr. Bautista completed another questionnaire, in which she
opined that Plaintiff could now sit for only 45 minutes, and stand for 15 minutes, at a
time; could rarely stoop, crouch, or climb ladders, and could still be expected to be
absent for four or more days per month. AR 766. In a letter prefacing the questionnaire,
Dr. Bautista expressed that she did "not feel [Plaintiff] is capable of gainful employment
as her various symptoms are severe and frequent." AR 762.

The ALJ found both opinions unpersuasive, reasoning that (1) an opinion that
Plaintiff could not work was neither valuable nor persuasive, because there was no
function-by-function analysis; (2) the opinion on limitations was inconsistent with the
state agency consultants' opinions; (3) a limitation to sedentary work was inconsistent
with the lack of objective evidence showing limited range of motion or compromised
gait; (4) the opinions were generally inconsistent with Plaintiff's activities of daily living;
and (5) the opinions appeared to be based upon Plaintiff's subjective complaints. AR
22–23.

With respect to the ALJ's first reason, the ALJ stated that an opinion Plaintiff
could not work "is inherently neither valuable nor persuasive in accordance with 20 CFR
404.1520b(c) and 416.920b(c)[.]" Although the ALJ does not specify the applicable
subsection of either regulation that would render the opinion neither valuable nor
persuasive, it is presumed that the ALJ referred to the subsections that provide that a
claimant's ability to work is an issue reserved to the Commissioner. *See* 20 CFR
404.1520b(c)(3)(i); 20 CFR 416.920b(c)(3)(i). However, a doctor's opinion that it was

1    unlikely that the claimant could sustain full-time competitive employment is not a

2    conclusion reserved to the Commissioner, but is "an assessment based on objective

3    medical evidence of [the claimant's] likelihood of being able to sustain full-time

4    employment given the many medical and mental impairments [claimant] faces and her

5    inability to afford treatment for those conditions." *Hill v. Astrue*, 698 F.3d 1153, 1160

6    (9th Cir. 2012). Such was the case here, as Dr. Bautista qualified her assessment,

7    noting she did "not feel" Plaintiff was capable of gainful employment based on his

8    knowledge—not an affirmative statement that Plaintiff was so incapable. In addition, the

9    ALJ's finding that this statement did not contain a function-by-function analysis ignores

10   the questionnaire attached to Dr. Bautista's letter. This was not a valid reason with

11   substantial evidentiary support for rejecting Dr. Bautista's opinions.

12        With respect to the ALJ's second reason, the ALJ does not elucidate how the

13   state agency consultants' opinions are better supported than Dr. Bautista's by access

14   and reference to the full record. In addition, an ALJ must consider the context of a

15   treating source's opinion in the record—especially the physician's treatment notes. *See*

16   *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding

17   treating opinion "conclusory" and supported by "little explanation," where ALJ

18   "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain");

19   *Revels*, 874 F.3d at 663 (finding ALJ erred in rejecting treating physician's opinion as

20   supported by "little explanation," where record included treatment notes supporting the

21   opined limitations).

22        Here, the ALJ did not address Dr. Bautista's treatment notes at all, instead

23   treating her opinions on Plaintiff's limitations as a stand-alone document, in spite of Dr.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

1    Bautista having seen Plaintiff at least five times during the relevant period. AR 22, 556.

2    The ALJ's general statement that the examining consultants' opinions were better

3    supported by access and references to the record, relative to Dr. Bautista's, was

4    erroneous – the ALJ's assessment is not supported by substantial evidence.

5         With respect to the ALJ's third reason, an ALJ may reject a treating or examining

6    physician's opinion on the ground that it is not supported by objective medical findings.

7    *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989). Yet "a bare assertion by an

8    ALJ that the 'objective medical evidence' does not support a physician's opinion fails to

9    constitute a specific and legitimate reason." *Embrey v. Bowen,* 849 F. 2d 418, 421-422

10   (9th Cir. 1988). Here, the ALJ pointed to a lack of evidence that Plaintiff had a limited

11   range of motion or compromised gait, as well as evidence Plaintiff could ambulate

12   normally and had stable fibromyalgia symptoms while on Suboxone. AR 23. However,

13   Plaintiff's normal gait and ambulation when walking across a doctor's office is not

14   inconsistent with Dr. Bautista's statements indicating Plaintiff could walk between 0 and

15   16 blocks on any given day.

16        In addition, fibromyalgia is characterized by an "absence of symptoms that a lay

17   person may ordinarily associate with joint and muscle pain." *Rollins v. Massanari*, 261

18   F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus,

19   "Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis," *Consultant*, June 1996, at

20   1260). Thus, "normal findings" in objective physical exams do not contradict Dr.

21   Bautista's conclusions regarding the effect of Plaintiff's fibromyalgia. The illusory tension

22   between the physical exams and Dr. Bautista's findings does not constitute substantial

23   evidence supporting rejection of the latter.

24

25

With respect to the ALJ's fourth reason, as discussed above, inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins*, 261 F.3d at 856. Here, however, the ALJ listed only the activities of Plaintiff shopping, caring for herself, driving, doing limited household chores, and helping her disabled father with household tasks, without indicating how Plaintiff's ability to do these activities at her own pace and on her own schedule contradicted any specific functional limitations assessed by Dr. Bautista. The ALJ's finding is not supported by substantial evidence.

Finally, with respect to the ALJ's fifth reason, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). However, fibromyalgia is diagnosed "entirely on the basis of the patient's reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, reliance on subjective reports is not improper but, rather, necessary to a significant extent in treating fibromyalgia patients. Furthermore, for the reasons discussed below, the ALJ did not properly support his adverse credibility determination with substantial evidence.

B. Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Next, Plaintiff challenges the ALJ's assessment of her subjective symptom testimony. Dkt. 12, p. 2.

To reject a claimant's subjective complaints, the ALJ's decision must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines

1  the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

2  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for

3  rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at

4  834. "[B]ecause subjective descriptions may indicate more severe limitations or

5  restrictions than can be shown by medical evidence alone," the ALJ may not discredit a

6  subjective description "solely because it is not substantiated affirmatively by objective

7  medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

8        Here, Plaintiff stated in a function report that she was often barely able to get out

9  of bed or lift her arms, she needed to write down directions to remember them, she had

10  difficulty responding to stress and change, and her ability to pay attention depended on

11  her anxiety level. AR 260–67. In her hearing, she testified that fibromyalgia caused pain

12  in her joints, neck, and back; she could only stand or walk for one hour and occasionally

13  lift up to 20 pounds, she had trouble with leaving the house, and with tasks requiring

14  memory or concentration; she could spend periods of 3 to 4 days mostly in bed; and

15  she was dependent on pain medications including Suboxone as well as steroids. AR

16  38–40, 43, 45, 48–49, 52–53.

17        The ALJ found Plaintiff's testimony inconsistent with (1) a lack of acute physical

18  issues; (2) a lack of acute mental health findings; and (3) Plaintiff's activities of daily

19  living. AR 21.

20        With respect to the ALJ's first reason, an inconsistency with the objective

21  evidence may serve as a clear and convincing reason for discounting a claimant's

22  testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

23  1998). Here, the ALJ cited a lack of exams showing limited range of motion or

24

25

compromised gait and noted that medications helped in controlling Plaintiff's fibromyalgia and adrenal fatigue symptoms. AR 21. As discussed above, a lack of objective findings one might ordinarily associate with joint and muscle pain is not inconsistent with a fibromyalgia diagnosis. *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001).

In addition, the ALJ cites Plaintiff's improvement when taking Suboxone and hydrocortisone. An ALJ may rely on *conservative* treatment in discounting a claimant's symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that over-the-counter pain medication is "conservative treatment"). Here, the use of Suboxone, a prescription narcotic painkiller, and hydrocortisone, a prescription steroid, cannot be characterized as conservative. Nor is it inconsistent with Plaintiff's testimony in which she admitted to being dependent on these medications.

However, "a strong opioid medication, cannot accurately be described as 'conservative' treatment." *Bucknell v. Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (unpublished) (collecting cases); *see O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) (collecting cases); *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (unpublished) (holding narcotic painkillers, with spinal injections and radiofrequency ablation, not conservative); *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (unpublished) (describing hydrocodone as "strong pain reliever"). *But see Jesus C. v. Berryhill*, No. ED CV 17-2103-PJW, 2018 WL 5984839, at *2 (C.D. Cal. Nov. 13, 2018) (unpublished) (finding treatment conservative where plaintiff was prescribed Oxycodone for only 2 of 27 months during relevant period).

With respect to the ALJ's second reason—a lack of objective evidence of mental health issues—the ALJ pointed to Plaintiff's lack of acute complaints, denials of suicidal ideation and depression, and unremarkable cognitive testing results. However, Plaintiff's symptoms are chronic, not acute. *See* AR 261. The ALJ also did not explain how or why unremarkable cognitive testing results in a one-time examination conflicted with Plaintiff's reports of significant anxiety and worsening depression.

Finally, with respect to the ALJ's third reason, the activities listed do not amount to a clear and convincing reason to reject Plaintiff's testimony. A claimant's participation in everyday activities, indicating capacities that are transferable to a work setting, may constitute grounds for an adverse credibility determination. *Orn*, 495 F.3d at 630 (emphasis added).

In this case, the ALJ listed Plaintiff's activities of spending time with her friends and family, helping her father, persisting while watching television or internet videos for long periods of time, and performing household chores. As discussed above, these activities are very limited, consistent with Plaintiff's testimony, and not described in any detail sufficient to support a finding otherwise. As the ALJ failed to provide "specific, cogent reasons" for discounting Plaintiff's complaints, the ALJ erred in making an adverse credibility finding without substantial evidentiary support. *See Lester*, 81 F.3d at 834.

C.     Harmless Error

Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d at 1115. An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r*

1   *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

2   The determination as to whether an error is harmless requires a "case-specific

3   application of judgment" by the reviewing court, based on an examination of the record

4   made "'without regard to errors' that do not affect the parties' 'substantial rights.'"

5   *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

6          Here, the ALJ improperly discounted the medical opinion evidence and Plaintiff's

7   subjective complaints in making an RFC assessment. This RFC informed the ALJ's

8   conclusion that Plaintiff was not disabled. Because the erroneous medical opinion

9   analysis and adverse credibility determinations were of consequence to the ultimate

10  determination of disability, these errors were harmful.

11  D. Remand With Instructions for Further Proceedings

12         "'The decision whether to remand a case for additional evidence, or simply to

13  award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

14  682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

15  an ALJ makes an error and the record is uncertain and ambiguous, the court should

16  remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

17  (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

18  the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

19  at 668.

20         The Ninth Circuit has developed a three-step analysis for determining when to

21  remand for a direct award of benefits. Such remand is generally proper only where

22             "(1) the record has been fully developed and further administrative
              proceedings would serve no useful purpose; (2) the ALJ has failed to
23             provide legally sufficient reasons for rejecting evidence, whether claimant
              testimony or medical opinion; and (3) if the improperly discredited
24

25

evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, a remand for further proceedings is the appropriate remedy. The ALJ erred because substantial evidence did not support his evaluation of the medical opinion evidence or his reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms.  This case is remanded to the Social Security Administration for further administrative proceedings – the ALJ is directed to re-evaluate the medical opinion evidence and Plaintiff's statements about symptoms and take additional evidence and testimony as necessary.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he/she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 16th day of December, 2021.

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 20